**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**NIKLAS K.,**

                              **Plaintiff,**

**v.**
                                                        **20-CV-799**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 20.  Niklas K. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 15, 18.  For the following reasons, Plaintiff's motion (Dkt. No. 15) is denied, and the Commissioner's motion (Dkt. No. 18) is granted.

## BACKGROUND

        In May 2017, Plaintiff filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") alleging that he became disabled on January 1, 2011 by

severe depression, anxiety, and panic attacks.  Tr. at 193, 202, 221.[1]  Plaintiff's claim

was denied at the initial level, and he requested review.  Tr. at 88, 100, 119.

Administrative Law Judge Gregory M. Hamel ("the ALJ") conducted a hearing on April 3,

2019.  Tr. at 40.  Plaintiff, who was represented by counsel, testified as did a vocational

expert.  Tr. at 40-77.  On May 20, 2019, the ALJ issued a decision in which he found

that Plaintiff was not under a disability as defined by the Act from January 1, 2011,

through the date of his decision.  Tr. at 12-39.  The Appeals Council denied Plaintiff's

request for review making the ALJ's decision final.  Tr. at 1-6.  This action followed.

Dkt. No. 1.


## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate

burden of proving disability throughout the period for which benefits are sought.  *See* 20

C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The

claimant is disabled only if he shows that he is unable to engage in any substantial

gainful activity due to any medically determinable physical or mental impairment which

has lasted, or can be expected to last, for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212,

216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 13.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  Congress places the burden upon the claimant to establish disability by requiring him to "furnish such medical and other evidence of the existence [of a disability] as the Commissioner . . . may require."  42 U.S.C. § 1382c(a)(3)(H)(i).  The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner.  20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

In keeping with this function, the Commissioner has established a five-step sequential evaluation for adjudicating disability claims, which is set forth at 20 C.F.R. § 416.920.  The claimant has the burden at the first four steps.  The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy; but the burden of proving disability is always on the claimant.  *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. § 405(g).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

   The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Tr. at 17.  The ALJ concluded at step two that Plaintiff suffered from the following severe impairments:  personality disorders including cluster B traits, borderline personality traits, oppositional defiant disorder, attention deficit hyperactivity disorder, depressive disorder (also diagnosed as mood disorder or adjustment disorder), and anxiety disorder.  Tr. at 18.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 12.04 (Depressive, Bipolar, and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), and Listing 12.11 (Neurodevelopmental Disorders).  Tr. at 18.

   The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:  he can do simple, routine, and repetitive tasks only; he cannot do tasks requiring public contact or more than occasional interactions with co-workers; and he cannot do tasks with a strong production pace element.  Tr. at 19.  Relying on the VE's testimony, the ALJ found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the jobs of recycler and paper board box maker.  Tr. at 33-34.  Accordingly, the ALJ determined that Plaintiff had not been under a disability at any time from January 1, 2011, through May 20, 2019.  Tr. at 34.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 15, 18.  Plaintiff argues that the ALJ improperly evaluated the opinion of Plaintiff's counselor and relied on his own lay interpretation of the record in formulating the RFC.  For the following reasons, this Court finds that remand is not warranted.

**Dr. Calabrese's Opinion**

Plaintiff began treating with his counselor, Kathy Calabrese, PhD, on March 18, 2018.  Tr. at 992, 999.  On January 8, 2019, Dr. Calabrese opined that Plaintiff would be unable to hold a job.  Tr. at 992.  She noted that Plaintiff's symptoms included anhedonia, decreased energy, suicidal thoughts, feelings of guilt or worthlessness, abnormal affect, impaired impulse control, anxiety, mood disturbance, difficulty thinking or concentrating, pathological dependence, change in personality, paranoid thinking or inappropriate suspiciousness, seclusiveness or autistic thinking, emotional withdrawal or isolation, emotional lability, flight of ideas, deeply ingrained maladaptive patterns of behavior, pressures of speech, easy distractibility, and sleep disturbance.  Tr. at 993.  She opined that Plaintiff was seriously limited, unable to meet competitive standards, or had no useful ability to function in all of the "mental abilities and aptitudes required for unskilled work" categories.  Tr. at 994.  She noted that Plaintiff had been unable to hold down a job in the past due to his severe anxiety attacks, which caused him to be late for work, not show up to work, and/or leave work. Tr. at 995.  She further opined that Plaintiff would miss more than four workdays per month.  Tr. at 996.

Dr. Calabrese's opinion was far more restrictive than the RFC reached by the ALJ.  Plaintiff argues that the ALJ failed to evaluate the supportability and consistency of Dr. Calabrese's opinion with the record as required by 20 C.F.R. § 404.1520c(b)(2) and committed harmful error by not crediting the opinion.  Having reviewed the decision in light of the relevant regulations, this Court does not agree.  According to the regulations for claims filed after March 27, 2017, the Commissioner need not give any specific evidentiary weight to any medical opinion.  *Raymond M. v. Comm'r*, No. 5:19- CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021), citing *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Although "the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors[;]'" *Raymond M.*, 2021 WL 706645, at *4, "the ALJ is not required to explain how he or she considered each factor."  *Danielle S. v. Comm'r of Soc. Sec.*, No. 1:20-cv1013-DB, 2021 WL 2227913, at *4 (W.D.N.Y. June 2, 2021); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ explicitly found that Dr. Calabrese's "rather extreme" opinion was "wholly inconsistent with the record as a whole, identifying symptomology including extreme symptoms and psychosis, never reported elsewhere in the record (including Dr. Calabrese's own records), and otherwise incongruous with her own treating record . . . ."  Tr. at 32.

The ALJ noted that Dr. Calabrese's records were particularly "incongruous" with the Comprehensive Psychiatric Emergency Program ("CPEP") records.  Tr. at 32.  The ALJ recognized that "[a]fter the 2011 brief hospitalization at the beginning of the period at issue, the subsequent 2017 CPEP visits did not result in more than 24 hour admissions."  Tr. at 30.  Even when admitted, "claimant's reports of more serious symptoms or the need for inpatient treatment were either suspicious for secondary gain or otherwise questioned by the acceptable medical source providers."  Tr. at 30.  Specifically, Plaintiff appeared to be seeking attention from his girlfriends.  Indeed, both Plaintiff and his mother attributed most of his depressive or aggressive behavior to romantic breakups or troubles.  Tr. at 25, 643 (claimant reporting that he engaged in superficial self-cutting following a breakup with his girlfriend); 26, 649 (Plaintiff attributing past aggressive behavior to romantic relationships and noting that being adopted affected his moods and made his breakups more hurtful); Tr. at 27, 561, 565-66, 749, 752, 755 (Plaintiff and his mother attributing Plaintiff's suicidal ideations and self-harm (superficial burning and cutting) to romantic problems).

Dr. Calabrese's opinion deviated from other opinions of record in its restrictiveness.  For example, consultative psychiatrist Dr. Gregory Fabiano examined Plaintiff on June 17, 2017.  Tr. at 604-605.  Upon exam, Dr. Fabiano found that Plaintiff was cooperative with adequate social skills, and coherent with goal-directed thought processes, neutral mood, full range of affect, intact attention and concentration, intact memory skills, average intellectual functioning, fair insight, and good judgment.  Tr. at 604-605.  Plaintiff reported to Dr. Fabiano that he was able to dress, bathe, groom himself, clean, shop, and manage his money "decently."  Tr. at 605.  Dr. Fabiano

concluded that Plaintiff had only mild limitations with simple directions and instructions and only moderate limitations with complex directions and instructions, sustaining concentration, performing tasks at a consistent pace, sustaining an ordinary routine with regular attendance at work, interacting with co-workers, supervisors, and the public, regulating emotion, controlling behavior, and maintaining well-being.  Tr. at 606. Similarly, on June 27, 2017, state agency psychological consultant T. Bruni reviewed the evidence in the file and opined that Plaintiff was moderately limited in several areas, but not significantly limited in interacting appropriately with the general public and getting along with co-workers.  Tr. at 32, 82-85.

Dr. Calabrese's own treatment notes suggest that Plaintiff was more functional than she assessed in her restrictive opinion.  For example, although Plaintiff complained that his friendships were "simplistic," he did have friends, including at least one "great friend."  Tr. at 32, 999, 1001, 1003, 1012-13.  He played hockey and lacrosse video games, indicating an ability to maintain attention and concentration.  Tr. at 32, 1001.  In April 2018, Plaintiff reported to Dr. Calabrese that he had a "busy, busy night," and he was able to cope with long lines, apparently referring to his work at the time.  Tr. at 32, 1000, 1002, 1019.  During a May 2018, visit with Dr. Calabrese, Plaintiff reported that he had a girlfriend who was supportive, and that he loved spending time with his father.  Tr. at 32, 1004-05.  Plaintiff reported that he was "moving in the right direction" in June 2018, although he continued to complain that he was sick of his mother controlling his life.  Tr. at 32, 1008.

In August 2018, Plaintiff reported that he was sleeping better, and that one of his friends offered him a job working for a roofing company. Tr. at 32, 1013. Plaintiff reported that he had not experienced any anxiety in the past five or six days, and that he was working and enjoying himself doing physical labor. Tr. at 32, 1013. Later that month, Plaintiff reported going to a bar after his birthday and meeting a girl, with whom he went to a movie. Tr. at 32, 1012. In early September 2018, Plaintiff reported that he was still working with the roofing company and his anxiety was not intruding. Tr. at 32, 1015. Plaintiff also stated that he had been able to go grocery shopping for himself and that he was "having fun." Tr. at 32, 1015. Although Plaintiff reported to Dr. Calabrese later that month that he was no longer working for the roofing company, he indicated that he quit this job because he was not paid fairly, i.e., not because of anxiety attacks. Tr. at 32, 992, 995, 1014. Plaintiff subsequently reported to Dr. Calabrese that he was taking care of his father and seeing himself as an adult. Tr. at 32, 1023, 1026. Plaintiff also related that he had enjoyed his previous job working in a kitchen. Tr. at 32, 1026. These treatment notes are not consistent with a finding that Plaintiff was unable to perform even the most basic work functions.

The ALJ also properly considered the treatment records from other providers, including objective clinical findings, which were inconsistent with Dr. Calabrese's extremely restrictive opinion. For example, Richard Collins, M.D., examined Plaintiff in December 2018 (the month after Dr. Calabrese's last treatment note in the record, and just before she rendered her restrictive opinion). Tr. at 30, 997, 1027, 1032-38. At that time, Plaintiff complained that he was unhappy living with his parents. Upon exam, Dr. Collins observed superficial cut marks on Plaintiff's left arm

but found that Plaintiff was alert and oriented to person, place, and time, denied suicidal

ideation, and exhibited a normal mood and affect, normal behavior, and normal

judgment and thought content.  Tr. at 30, 1032-34, 1037.  Dr. Collins noted that Plaintiff

politely declined Lexapro, and he referred Plaintiff to a different counselor and

recommended that he focus on finding employment and becoming financially

independent so that he could live on his own.  Tr. at 30, 1037.

During a follow-up visit in January 2019 (only weeks after Dr. Calabrese's

restrictive opinion), Dr. Collins found that Plaintiff exhibited normal mood, affect,

behavior, judgment, and thought content.  Tr. 30, 1039-40.  Plaintiff once again declined

psychotropic medications and told Dr. Collins that he was still considering whether or

not to contact the counselor that the doctor previously recommended.  Tr. at 30, 1039.

Although Plaintiff complained of gastroesophageal reflux symptoms, he admitted that

medication was helpful, his diet was "fair," he appeared well-developed and well-

nourished on examination, and his weight was normal (with Plaintiff being 5'4" tall and

ranging between 137 and 144 pounds).  Tr. at 30, 1033-34, 1038-40.

The ALJ also considered earlier treatment records, which were likewise

inconsistent with Dr. Calabrese's opinion that Plaintiff was unable to work.  These

records suggest that when compliant with treatment, Plaintiff did well managing his

symptoms and even when he was not compliant, he was able to function far better than

Dr. Calabrese opined.  For example, when Plaintiff presented to Horizons for initial

evaluation and outpatient counseling in May 2016 following a breakup with his girlfriend,

he reported that he had not complied with his medication for the past three or four

months and complained that he was suffering anxiety and depression.  Tr. at 25-26,

643, 653; *compare with* Tr. at 25, 501 (February 2016 notation that Plaintiff was

reportedly "doing really well" while taking Lexapro and Abilify).  On mental status

examination, Plaintiff had a depressed but appropriate affect when discussing his

current stressors, and he was guarded in his responses, but he was ultimately able to

engage appropriately.  Tr. at 25, 660.  Plaintiff was dressed appropriately, he

maintained good eye contact and cooperative behavior, his speech was coherent, his

thought process was logical and his thought content appropriate, he was oriented and

denied any auditory or visual hallucinations, and he demonstrated good insight and fair

or good judgment.  Tr. at 25, 660.  Plaintiff's strengths were noted to include a strong

support system of family and friends.  Tr. at 25, 655, 649, 653, 661-62.


In June 2016, Plaintiff reported that he had recently started a job at LA

Fitness, but quit due to stress, relating that he had been working 60 hours per week.  Tr.

at 26, 527.  Plaintiff reported that he enjoyed playing the drums for recreation, and he

spent as much time as possible with his friends, who were his support system.  Tr. at

26, 529.  Shabrin Haque, M.D. found that Plaintiff had an irritable and dysphoric mood

and a blunted affect, but demonstrated fair eye contact, appropriate behavior, normal

speech, goal-directed and logical thought process, no delusions, normal perceptions, no

active suicidal ideation, normal orientation, intact memory, fair concentration, fair insight

and judgment, and average intelligence.  Tr. at 26, 525-526, 529.  Dr. Haque

recommended restarting medication as well as therapy and possibly a substance use

evaluation for Plaintiff's cannabis use and gave Plaintiff a global assessment of

functioning (GAF) score of 60, indicating only moderate symptoms.  Tr. at 26, 529.

Plaintiff and his mother subsequently reported that he was compliant with his medications (Abilify and Lexapro) and experienced dramatic improvement and stability in his symptoms, despite daily cannabis use and a positive drug screen for Xanax, which was not prescribed.  Tr. at 26, 532, 684, 707, 713.  Dr. Haque's mental status examination in July 2016 revealed that Plaintiff's mood was normal and his affect appropriate, and Dr. Haque again assessed a GAF of 60.  Tr. at 26, 682-86.  Although Plaintiff did not remain compliant with treatment and he reported an increase in symptoms in August 2016, an examination revealed normal orientation and affect. See Tr. 26, 538-40, 722-23.

None of these records are consistent with or otherwise support Dr. Calabrese's conclusion that Plaintiff was incapable of working.  Accordingly, this Court finds that the ALJ did not err in rejecting Dr. Calabrese's opinion as "rather extreme."

**Basis for the RFC**

Plaintiff next argues that Plaintiff's case must be remanded because the ALJ rejected all of the opinions of record, and therefore, relied on his own lay interpretation of this evidence.  Once again, this Court disagrees.  The ALJ alone is responsible for determining a claimant's RFC.  20 C.F.R. §§ 404.1520b, 404.1545-46, 416.920b, 416.945-46.  The ALJ reaches a claimant's RFC based on all of the relevant evidence, including medical records, statements by physicians, and a claimant's description of his limitations.  20 C.F.R. §§ 404.1545, 416.945.  It is axiomatic that the ALJ's RFC finding need not track any one medical opinion.  *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (rejecting plaintiff's contention that ALJ impermissibly

relied on vague medical evidence and on his own lay opinion, and finding that ALJ properly relied on a variety of medical and other evidence in arriving at his RFC finding, including Plaintiff's testimony that he could lift 10 to 15 pounds and perform certain activities of daily living); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (finding that the ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"), citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.").

Indeed, the Second Circuit Court of Appeals and district courts within the Circuit have repeatedly affirmed the Commissioner's decision where the ALJ rejected the sole medical opinion of record, reasoning that an ALJ has the authority to assess the RFC based on all the relevant evidence and to resolve material issues of fact.  *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (upholding the ALJ's RFC finding despite the fact that she rejected the only medical source opinion from the claimant's psychiatrist, because the opinion was largely contradicted by the doctor's own unremarkable clinical findings as well as Monroe's recreational activities); *Curry v. Comm'r of Soc. Sec.*, No. 20-1472, 2021 WL 1942331, at *2 n.3 (2d Cir. May 14, 2021) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear . . . .  The ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination.") (citations omitted); *see also Tracy N. v.*

*Comm'r of Soc. Sec.*, No. 20-CV-0841-WBC, 2021 WL 2649577, at *3-4 (W.D.N.Y. June 28, 2021) (collecting cases which hold that "an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion").

In this case, the ALJ considered the record as a whole and relied on other evidence in deciding that Plaintiff was not disabled, including:  (1) after 2011, Plaintiff was never hospitalized for more than 24 hours; (2) objective deficits in concentration and behavioral problems seemed to have "dropped off to only a few incidents in 2013;" (3) Plaintiff appeared to lead an active social life, notwithstanding his personality disorder and cluster B traits, with his only difficult relationship being with his mother; (4) Plaintiff was able to obtain his GED and had "generally normal results on formal cognitive testing[;]" (5) Plaintiff's lithium dose, on which Plaintiff reported being very stable, was so low it was actually non-therapeutic; (6) medical providers questioned Plaintiff's reports of more severe symptoms as being asserted for "secondary gain;" and (7) his mood disturbances and anxious mood or affect are not uniformly seen in the examination reports," and "there [were] no specific reports of panic attacks in the longitudinal record."  Tr. at 30-31.  This evidence is more than sufficient to meet the substantial evidence standard.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a

reasonable factfinder *would have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
               January 24, 2022


                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**